[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a limited contested action for a dissolution of marriage and other relief brought and tried at the Judicial District of New Haven. Based upon the evidence presented, the court finds that it has jurisdiction over the matter. The court finds that there is one minor child issue of the marriage, Mehdi Solati, born April 18, 1990. There is also another child issue of the marriage who has reached the age of majority. The parties were married on November 8, 1975 in Tabriz, Iran. The relevant history of the parties is that they came to the United States together in approximately 1978. Originally the parties came to Oklahoma where they lived for a brief time, and where the plaintiff received a college degree. Shortly thereafter, the parties moved to Missouri. In Missouri, the defendant received his degree and the parties lived there for several years. The parties moved to Connecticut in approximately 1986. The defendant obtained a job at the Connecticut Department of Transportation as an engineer. The plaintiff worked at Uno House, and then at Team, Inc., which was a program affiliated with the Head Start program.
In 1992, by agreement of the parties, the wife went to Iran with the parties' daughter. She stayed there for approximately 11 months, during which the husband visited her. The plaintiff, Mrs. CT Page 72 Solati, describes that she returned in June of 1993, after the daughter had a difficult time due to the fact that she did not read the Farsi language, and the cultural difficulties experienced by the daughter in that she was, by that time, an "American teen".
The other information provided by the testimony of the parties indicates that the plaintiff is currently 48 years of age. She is in good health. Currently the parties live together in a jointly owned home in Woodbridge, Connecticut, with the minor child. In addition, their daughter, Sanam, lives at home. She is 21 years of age and a full-time college student. The parties have a foster child named Patrick who also lives in the family home. That child has lived with the parties for approximately four years.
The plaintiff, Mrs. Solati, is currently employed as the director of Sage Services of Connecticut. She earns approximately $34,000 per annum, gross, and her income is supplemented by the contract she has for the care of the foster child Patrick. That contract provides an additional $31,356.00 on an annual basis. Both of those sums are accurately reflected on the plaintiff's financial affidavit. The plaintiff has accumulated an account at Merrill Lynch which was reported to have a value of $18,936. That value was amended during the course of the trial and is currently reflected as $16,936. In addition, she has accumulated an IRA valued at $7,282. The parties also share property in Iran which will be addressed subsequently.
The defendant is currently 50 years of age. He reports himself as having good health, even though he has suffered from some symptoms of diabetes. The plaintiff reported that Mr. Solati had been hospitalized approximately two months ago, and that she was under the impression that it was related to his heart. The defendant maintains that his health is good. The defendant has a B.A. in civil engineering. He is employed supervising construction for the State Department of Transportation, mostly having to do with bridges and some highways. His base salary is $54,000, and in some years such as 1998, he will earn $56,000 due to the overtime attributed to a specific project, and work during evening hours. The defendant has testified that he has submitted a child support guidelines worksheet which includes the overtime he had earned in 1998 and which is expected to finish due to the completion of a specific project. He has also submitted W-2 forms and pay stubs. The defendant shows some funds in a credit union account, an IRA worth $2,000.00, a life insurance policy with no CT Page 73 cash value, and a membership in a "Holiday Club" which is offset by a debt also listed on his financial affidavit. The defendant is also vested in a pension from the State of Connecticut which is described in detail in plaintiff's Exhibits #7 and #8. The plaintiff has no pension or retirement benefits other than an IRA account.
There has been testimony presented that the parties are owners of property in Iran. That property consists of a home and a store, both of which the parties purchased with joint funds. The testimony is consistent with regards to the purchase of the house which was done some 12 years ago and purchased for approximately $40,000. The plaintiff testified that the store was purchased approximately five years ago at a cost of between $20-25,000. The defendant testified that the store was purchased in 1990 for approximately $10-12,000. The valuation of the property in Iran is difficult. The defendant has listed the properties as having a value of $160,000. That testimony is inconsistent with his testimony at trial during which he stated that the house was worth $55,000 and that the store had a value of approximately $11,000. The plaintiff has the property in Iran listed with a value of $161,666 for the house and $32,646 for the store. No adequate explanation is offered as to the basis for the values of the Iranian properties on each of the financial affidavits. There is also contradictory evidence as to whether the defendant is the owner of two lots in Iran which originate from his share of his father's estate. The court finds that the evidence as to those lots is insufficient to include them in the marital estate of the parties, and will not consider those lots or their disposition in the court's order.
The testimony of the parties indicates quite clearly that both parties are good, loving, and dedicated parents to their children. Both parties have been supportive of the children's studies and activities and have continued to be so, even under the difficult situation of having lived under the same roof while this action has been pending.
The court has considered the provisions of Conn. General Statutes §§46b-40, 46b-56, 46b-62, 46b-81
and 46b-82, and other relevant statutes with respect to the issues presented. After having considered those statutes, the court finds that the marriage of the parties has broken down irretrievably and the same is hereby ordered dissolved. The court grants joint legal CT Page 74 custody of the minor child Mehdi. The child shall physically reside with the plaintiff subject to access to the defendant for liberal flexible and reasonable visitation. That visitation is to include, but shall not be limited to, overnight and weekend visitations as may be arranged, division of school and holiday visitations as may be arranged, and access to the child on weekday evenings so that the defendant may continue his involvement in the child's extracurricular activities as per his existing practice. Each party shall have a period of three weeks of summer vacation with the child as arranged between them. The scheduling of such vacation is to be disclosed between the parties on or before April 1st of each year. Those weeks may be consecutive and uninterrupted, subject to each parent being responsible for telephone contact between the child and the other parent during that period of vacation. The parents shall not make nor encourage the child to make any plans or arrangements which might interfere or impede the other parent's visitation with the child, unless those plans or arrangements have been previously discussed with the other.
The parties shall consult with regards to major decisions about the child's life, particularly those that might impose financial burdens on the parties or affect the child's relationship and/or contact with his parents. Those decisions shall include, but are not limited to, school attendance, summer camp, vacation trips, and routine and extraordinary medical, dental, psychological or psychiatric care. The parties are obligated to keep the other appraised of the child's educational development, his vocational and recreational interests, and other similar matters. Both parties shall have full and complete access to any and all records, memoranda, or other communications with respect to the education, health and welfare of the child. Similarly, both parties shall be entitled to confer with any individual providing educational or medical services to the child. Both parties shall cooperate in the providing of any authorization as may be required to the other. The parties shall insure and encourage reasonable access to the other parent when in the company of the child, including access by mail and telephone. Neither party shall remove the child from the State of Connecticut for more than 48 hours without prior notice to the other and without providing information as to the intended location to which the child will be taken as well as a telephone number and address of that location. Neither party shall remove the child from the United States without the written agreement of the other or the permission of the Superior Court of the State of Connecticut. CT Page 75 Each party shall remove the child's name from coverage under any passport other than a passport of the United States of America.
The defendant is ordered to maintain the minor child on his present health insurance coverage as made available to him by his employer at a reasonable cost. Such costs as are uninsured or uncovered by such medical plan shall be divided between the parties in accordance with the child support guidelines submitted and filed with the court on November 17, 1999. In the event that insurance coverage is not available to the defendant as aforesaid, the plaintiff is to provide such insurance as may be available through her employer at a reasonable cost. In the event that neither party can provide medical insurance through their employment, they shall be obligated to apply for such insurance under the "HUSKY" plan and the defendant shall be responsible for payment of premiums under said plan. The processing of any claims under medical insurance shall be governed by the provisions of § 46b-84(d) of the Conn. General Statutes.
The defendant shall pay to the plaintiff the sum of $196.65 per week as support for the minor child. Said sum is in accordance with the child support guidelines, and shall be payable by way of an immediate wage withholding as provided by statute.
Ownership and possession of the 1993 Buick automobile is awarded to the defendant; ownership and possession of the 1994 Dodge automobile is awarded to the plaintiff. The parties shall cooperate in executing any documents necessary to transfer the titles and registrations of those automobiles within a reasonable time. The parties shall remain as equal and joint owners of the retail store and the house located in Iran. They shall share equally in the proceeds from any rental collected from those properties, and shall share equally in any expenses incurred in the ownership or maintenance of those properties. The parties shall sell the jointly owned interest in the Holiday Club. The proceeds of that sale shall be used to pay the outstanding debt represented by the ATT credit card debt presently listed on the defendant's financial affidavit. The defendant shall be obligated to make payments as required on that debt in the interim period pending sale of the Holiday Club property. Any profit or proceed realized over and above the debt, as currently existing, shall be divided equally between the parties. Any loss resulting from said sale shall be equally divided.
The defendant shall quit claim to the plaintiff all of his CT Page 76 right, title and interest in the jointly owned real estate known as 4 Oak Hill Lane, Woodbridge, Connecticut. The plaintiff shall be responsible for the payment of any and all debts associated with that property, including, but not limited to the first and second mortgage payments. In exchange for his conveyance, the plaintiff shall deliver to the defendant a promissory note, which may be secured by a mortgage, in the amount of $45,000, payable without interest on demand upon the sale or refinancing of the property, the event of the minor child no longer occupying that property as his primary residence, or on July 01, 2008, whichever shall first occur. The plaintiff shall convey to the defendant the sum of $7,000 from the Merrill Lynch account listed on her financial affidavit. In addition, the plaintiff shall convey to the defendant any and all interest in the Persian rugs located in Iran, which rugs are listed on the defendant's financial affidavit. Said rugs are found to have a value of $8,000. The parties shall divide equally the Persian rugs as described in plaintiff's Exhibit #2, which rugs are located at the jointly owned residence of the parties. Similarly, the parties are to divide the gold coins presently located in the jointly owned safe deposit box in the same manner. If the parties are unable to reach agreement as to the equal division of these items, the court shall retain jurisdiction for that purpose. The defendant shall have ownership and possession of his university ring, his class pin, and his ring. The remaining items in the safe deposit box, shall be the sole and exclusive possession of the plaintiff. The contents of the marital home, with the exception of the defendant's personal items, tools, items he has purchased at flea markets, and the items described above, shall be the property of the plaintiff.
The defendant shall transfer one-half of his interest in the pension he currently holds with the State of Connecticut to the plaintiff. He shall elect the "100% Contingent Annuitant" option for payment under his pension. The defendant shall be liable for payment in full of the $35,000 debt due to MBNA as listed on his financial affidavit. He shall also be liable for the debts listed to Reza Malatinzas and Al Molford. As to those three debts, the defendant shall indemnify and hold the plaintiff harmless. The defendant shall be obligated to maintain his life insurance as provided through his employment in the amount listed on his financial affidavit. The defendant shall designate his son as the irrevocable beneficiary of said policy, and shall name the plaintiff as trustee for that purpose. That policy shall be maintained in effect through the minority of the child. CT Page 77
The court has considered the plaintiff's claim of a dowry due under the marriage contract. The court finds that even if the contract were valid, despite the defendant's claim that the contract may be invalidated by the plaintiff's seeking of a divorce decree, the evidence submitted in support of the plaintiff's claim is insufficient for the court to determine the value of the contract. Accordingly, the court declines to enter enforcement of that agreement. The parties may, if they choose, seek enforcement of that contract in Iran, and may satisfy the enforcement of such judgment, if obtained, from their respective interests in the jointly owned Iranian properties.
The court orders the defendant to cooperate with the plaintiff in obtaining an Iranian divorce as promptly as possible upon judgment in this case. The parties are to pay equally in such reasonable costs as may be related to the obtaining of that divorce, and costs should not be incurred without the prior consent of both parties. The court further orders that neither party may alter the orders entered by this court in the course of obtaining the Iranian divorce by any means, with the exception of the marriage contract as provided above.
Each party shall pay the sum of $1 per year as alimony to the other. The defendant shall make available medical insurance coverage to the plaintiff pursuant to the provisions of COBRA at the plaintiff's own expense. Each party shall be responsible for their own attorneys fees. Unless otherwise stated, each party shall retain ownership of any personal property listed on their respective financial affidavit. Each party shall execute, seal, deliver, file and record such documents or instruments as may be necessary for the purpose of giving full cause and effect to the orders entered in this decree.
Robaina, J.